Okay. Your Kelly? Kelly Zusman, Your Honor. Okay. Go ahead. May it please the Court, Kelly Zusman appearing on behalf of the United States. Your Honor, this is the United States appeal from a district court order dismissing an indictment that charged a single count of illegal reentry. The issue here is the underlying validity of the prior deportation and whether or not it complied with the due process clause. Unlike several other cases from this Court, there's no dispute that the defendant was, in fact, advised of his right to counsel and he was advised of his right of appeal. The issue is whether or not the I.J. had an additional obligation to inform the defendant that if he filed an appeal, he might, at some future point, accrue enough time to then be eligible for a discretionary form of relief known as a 212C waiver. Or if he won his appeal. If he won his appeal, he would have been eligible for a waiver. If the appeal had taken long enough, then yes, that's accurate. How many months? Eight months? It depends on which date you use. The district court judge here did not, in fact, make a finding on exactly how long he had been present in this country at the time of his hearing. However, the district court assumed, for the purpose of our argument, that he had been here for just eight months shy of seven years. And he used the... Well, that was the government's position, right? Our position actually was that it was the date that he received his temporary status, which would make it about 11 months. Well, he said he was taking the government's position. Either 11, would it matter how long it took if he prevailed on his appeal? The point is that he, in fact, was advised he was right to appeal. But he wasn't... He did not file an appeal. He wasn't advised that if he filed the appeal and, let's assume, prevailed, then he would be eligible for 212C relief. Well, and the I.J. was in no position to know that. At the time he appeared before the I.J., the record before the I.J. revealed that he, in fact, was not eligible. But it was a legal question, as it wasn't a... He didn't have a lawyer at that hearing, did he? That's correct. There was a mass number. It wasn't a one-on-one hearing. There were a whole bunch of people out there. But there's been no allegation here that he was advised in mass form. No question that he was properly advised of his right to appeal and his right to attorney. But how many people were so advised at that time? The record isn't clear on that. It's unclear how many were there. We know there was more than one. Yes. It was a group. It was kind of a mass arraignment. From the record that we have, you can only see three mentioned. So, no, there's no indication that there was a mass waiver here. Well, but the government's got those records. Right? That's correct. Again, there's no dispute that he was, in fact, advised of his right to counsel and his right to appeal. And, Judge Reinhart, in terms of your question, if he'd failed an appeal, if he'd been successful, would he have gotten the seven years in? The answer is probably yes. That's probably true. Aren't you supposed to advise him of the various forms of relief he would be eligible for? This court, yeah, the answer is yes of what he's eligible for. This court has held in Arietta that had he been eligible on the date that he appeared in front of that IJ, had he had those seven years, then I would absolutely agree. So the question's one step beyond that. If you tell him he can appeal, don't you have to tell him, and if you prevail, you're going to be eligible for 212 relief? Well, and that's where I think we get to the Ahumada case. And that's where I think this Court came close to that issue. This Court has never directly addressed the issue raised with this appeal. But in Ahumada, it was suggested that although a competent attorney may well advise someone to file an appeal solely so that they can get enough time to be eligible. But that's different. We've got two different propositions. One is you tell him to file an appeal so he can run out the clock. The other is you tell him to file an appeal, and if he's right on the merits, then he's eligible for the relief. You know, I understand there's a question about whether you should tell him file an appeal, whether there's any merit or not, because you'll run out the clock. But that's not what I'm saying here. That's a different proposition from saying if you file an appeal and you prevail, then you're going to be entitled to this relief, which will allow you to stay here. And that's absolutely correct, Your Honor. It's also a different proposition to extract from Arrieta an obligation posed to the IJ to foresee that, in fact, if you file an appeal, somewhere down the road you may be eligible for some form of relief that you're not currently eligible for. What's wrong with that? I'm sorry. What's wrong with that? Because this Court has never extended it that far. 1326D allows collateral attacks. He was in a special category. He was a temporary lawful resident under the Special Agricultural Workers. He was here helping us harvest the crops, right? That's correct. So they got a break, too. And he was a little slow in getting his eligibility date because he had to put up $185 to file that SAW application. So could we assume that the IJ knew about this man and knew that he was a temporary lawful resident and that he was here under the special SAW program? Yes. That information would have been in the record before the IJ. All right. And what was also in the record was that the reason he was before the IJ was because he was caught selling cocaine. He was convicted of distributing narcotics. Yeah, he got eight months for that, didn't he? That's correct. Yeah, okay. But had he not had that conviction, then he wouldn't have been in front of the IJ. His lawful domicile here would have continued. It was that conviction that brought forth the removal proceeding. I understand, but he would have been entitled to the 212 relief, even with that conviction, if the Attorney General saw fit to relieve him because he had, I believe, two children born in this country. His wife was an American citizen. The whole family was up here, and it was a very light sentence that he got. And so that wouldn't preclude relief. He may not get it, but he was at least entitled to have his eligibility, or not eligibility, but be considered for that relief, right? Yes, Your Honor. So, you know, what would have been the problem? Just tell him that about his entitlement to 212 relief. There certainly wouldn't have been a problem. The question here, though, is whether or not his due process rights were violated because it was the IJ who told him he had a right of appeal but didn't tell him anything further. This Court has never extended that obligation further than advising him of his right to appeal. And Ahumada suggests that the IJ does not, in fact, have that obligation. Well, then you had an INS attorney there, right? Correct. And he was asked, the judge says, are you aware of any form of relief available for any of these individuals? He says, I don't believe so, Judge. So you're relying on a government attorney. And if he knew that he was in the SAW program and if he'd spoken to him, he would have easily found out that he was very close to being eligible for that relief. But the key is he wasn't eligible. He wasn't eligible at the time. Correct. But when you tell somebody, you know, the general rule is you're supposed to tell them about all the avenues of relief that are available. And you tell them that, you know, at the moment you're not available. You're not eligible. But if you file an appeal and you prevail, you will be eligible. So what's the point of telling him he can file an appeal unless he knows that it's going to have this collateral consequence? And I was hoping to reserve at least a minute's time for rebuttal. May I answer your question? You'll have a minute no matter what. Gregson's a very generous fellow. Thank you, Your Honor. Soft-hearted, you may have heard, compassionate. The problem here, which is demonstrated in the Torres Avila case from the Eastern District of Washington, is where do you draw the line? We draw the line at eligibility. You must be eligible when you appear before that I.J. to trigger these I.J.'s obligation to tell you about available relief. It doesn't extend beyond that. Torres Avila points out that, well, what's close? Is it eight months? Is it nine months? Is it ten months? Torres Avila said two years was too long. But if we're going to do anything short of being eligible on the date you appear in front of the I.J., the problem is where do you draw that line? How close is close? Do you want an opinion telling you how close is close? No, I want an opinion saying that you need to be eligible when you appear before the I.J. for the due process clause to then trigger the I.J.'s requirement to tell you you're available. Well, as a practical matter, a lot of those appeals, once they're taken, I mean, they take a couple years on average to resolve what they take. But now that's been the law has been changed. But at that time, he accrued his time towards the relief, even though he was in custody. But you have to have a viable basis for appeal. And that's where the defendant here fails to identify any error beyond the timing issue. Timing gets you to prejudice. It doesn't show that there was an actual due process violation, which is what this Court has looked for in Arrieta and Ahumada, that there's a violation there that may give you some relief on appeal. We don't have anything here identified. Say he had a lawyer there. And would the lawyer have been obligated, his own lawyer, would the lawyer have been obligated to tell him that, well, you've got eight months to go and you need to take an appeal, and by the time that appeal is resolved, you will have satisfied whatever the seven-year requirement. A lawyer would have done that, right? I think an ethical lawyer wouldn't advise someone to file an appeal if there was a viable basis for appeal. It's colorable is all you need. And the counsel makes an argument that he was really eligible, that he counted more time. It may not be a winning argument. But there was a colorable argument that they should have counted more that he actually had seven years. And I would disagree with the assertion that there was a colorable argument that his triggering date was when the SAW provisions went into effect. There is no law to support that. In fact, every decision from this Court has used as the trigger date the date that the person actually is given the application or is actually granted due process. But there was no such decision at the time, was there? That's correct, Your Honor. And I will reserve the rest of my time for rebuttal. Thank you. Thank you. All right. If it pleases the Court, I'm Terry Kolke for Mr. Lopez Velazquez. And based on what I've the discussion so far, I wanted to suggest that the issue can be narrowed even further than the district court rule. And that is whether or not, because this is the issue, whether or not in February 12, 1994, in front of the immigration judge at that time, there was a reasonable inference that Mr. Lopez Velazquez would be eligible for relief. And there was a colorable claim. There was a reasonable inference, and that was based on the SAW Act, which came into effect on November 6 of 1986. Section 210A of that Act entitled, Lawful Residents, charged the Attorney General to adjust the status of aliens who applied, who were living in this country, and who could show that they had 90 man-hours of work from the 12-month period before May the 1st of 86. In fact, in the A file, in front of the immigration judge, there was proof from two or three of working here, and that he had 100 man-hours of work between November of 85 and January of 86. So under this section of the SAW Act entitled Lawful Residents, the Attorney General was charged to let these people apply for lawful status. But prior, this is Section D, prior to the application period, you had 18 months to apply. Section D said that if the alien is picked up, he can, one, resist deportation or removal. Two, he had a right to get work permits. He had a right to be employed. So what we're really talking about here is just eight months of time. If, and what the statute says is that you have to have seven years of consecutive unrelinquished domicile. The seven years, we know he was living here. Unrelinquished is not contested. Domicile is not contested. The only thing that's contested by the government is lawful. The lawfulness between February the 12th, 1987, and February the 12th, 19 — I'm sorry. The government concedes, I believe, that at least if we get to December 28th — let me get my dates right — the date that he was granted the application for temporary legal residence, which is October the 28th of 1987. So you have this eight-month period from February the 12th, 1987, to October the 28th, 1987, a little over eight months. The question is, is that period of time lawful? Or actually, to rephrase the question, the question in front of the immigration judge on February the 12th, 1994, was, does this alien have a reasonable claim that that eight months is lawful? Because if that eight months — if you have a reasonable claim for that eight months being lawful, then you've got the seven years. That isn't true today, of course. Pardon? That is not true under the — well, of course, the law has been repealed now. But the fact is that the determination of the starting date was up in the air in 1994. So the argument you're making there relates to the fact that it was a reasonable argument to make that his lawful residency preceded the October date, which was —  Yes. And — yes, I appreciate that. And to show that it's lawful, there is a section enacted by Congress that said during that period he could not be deported, during that period he had a right to get work permits, during that period he had a right to be employed. And he showed, and was in the A file, that he had been employed for those 90-man hours. So he had been given rights to employment. So are you making an argument now on the merits that he was actually — actually had the seven years? Or are you using this to show there's a colorable argument? Actually, that he had a colorable argument. Okay. Even the government concedes in the last page of its reply brief that there was no — today, there's no law on this point. Certainly in 1994, before the immigration judge, there was no law on this point. And if there's no law on this point, and if the Congress had given my client these rights to avoid deportation and to work, he certainly had a colorful claim that he was lawfully here, because what more can you ask for in terms of a colorful claim that you're lawfully here by saying you have a right to work here? And the government — and actually, if you're interpreting 212, according to the policy behind the Immigration Acts at that time, the policy, as cited in both of our cases, was to give millions of aliens the right to have their status adjusted to lawfulness. And interpreting 212 in that posture, on February the 12th, 1994, that immigration judge had the facts in the A file before him that, for that eight-month period of time, Mr. Lopez Velazquez had a very arguable claim of lawfulness. So you don't have to get to where the district court got to. You could say that he had a colorful claim. He had the facts in the file to support that claim. He had the law of Congress to support his argument. There was no law on the books against it. And certainly, he had a reasonable chance of being — of having — of being entitled to relief. And certainly, if he appealed, he undoubtedly would have obtained eligibility for relief. We have your argument in hand. Yeah. So that is my point. All right. Thank you. Thank you. Thank you, Your Honor. Just one very brief point. This Court has recognized on several occasions that IJs are not clairvoyant. I don't think there's anything in this record which would have illuminated for this IJ that there was this colorable argument that somehow his lawful domicile extended earlier than the date that he actually applied for relief under the SAW provisions. Should you want to reach the issue of whether or not he actually was eligible on that date, we would urge this Court to remand and allow the district court to make that fact-finding in the first instance. Let me ask you a question here. I have somewhere in my notes here that about 1.3 million immigrants applied for amnesty under SAW, 1.3 million, and nearly 1.1 million of those applications were approved. Pretty high number. There were two different forms of eligibility. There was a 212H, which was the amnesty provision. This defendant claims that he was entitled to relief under 212C, and I don't know how that breaks down within those numbers. But, yes, there's no question that there were a number of waivers granted under this program. Yeah, there was a pretty high acceptance rate of those applications. That comes out of an article out of 12 Drake Journal of Agriculture. And, Your Honor, we don't dispute that Mr. Lopez-Velasquez. 359-364. We don't dispute that Mr. Lopez-Velasquez otherwise qualified for this discretionary form of relief. The sole basis for our appeal is that he hadn't met the 7-year lawful domicile requirement. All right. Thank you very much. Thank you, Your Honors. The matter will stand submitted.
judges: Pregerson, Reinhardt, Strom